879 P.2d 1107

**CENTRAL PAVING COMPANY, INC., Plaintiff–Respondent–Cross–Appellant,**

v.

**IDAHO TAX COMMISSION, Defendant–Appellant–Cross–Respondent.**

No. 20424.

Supreme Court of Idaho.

Aug. 22, 1994.

Larry EchoHawk, Idaho Atty. Gen.; Theodore V. Spangler, Deputy Atty. Gen., Boise, for appellant/cross-respondent. Theodore V. Spangler argued.

Dillion, Bosch & Daw, Chartered, Boise, for respondent/cross-appellant. C.A. Daw argued.

SILAK, Justice.

This is an appeal by the Idaho State Tax Commission ("Commission") from a decision of the district court that a rock crushing machine owned and operated by Central Paving Company, Inc. ("Central Paving") is exempt from a use tax assessment pursuant to the "production exemption" set forth in I.C. § 63–3622D(1) as that statute was in effect in 1986 through 1988. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Central Paving is a paving contractor. Larry McEntee owns 85% of Central Paving and 50% of another company, Consolidated Concrete, Inc. ("Consolidated"). Consolidated manufactures and sells concrete. Other than partial ownership by one individual, these two companies are otherwise separate and distinct business entities.

Central Paving owns a gravel crusher which is located at a gravel pit near the operations of Consolidated, on property owned by Consolidated. Central Paving uses this machine to extract and crush rocks for gravel. According to the separate production records kept by Central Paving on this machine, about 94% of the output of this crusher was sold to Consolidated. Consolidated used the gravel received from the Central Paving crusher as an ingredient to make concrete, which Consolidated later sold at retail. Consolidated pays Central Paving for crushing and allows Central Paving, upon payment of a royalty, to take whatever rock or gravel Central Paving needs. Any royalties Central Paving owed to Consolidated would be netted against the crushing costs that Central Paving charged Consolidated.

Central Paving paid a use tax on all gravel it retained and used in its projects, but not on the rock crushed for Consolidated. Consolidated used the gravel received from the Central Paving rock crushing machine to make concrete. The retail sale of the concrete was accompanied by the payment of a sales tax.

The Commission acknowledged the accuracy of Central Paving's records and reporting and remittance of sales tax on the concrete sold by Consolidated. Based upon these facts, however, the Commission determined that the contract between Central Paving and Consolidated was for the rock crushing *services* Central provided to Consolidated. The Commission reached this conclusion because it claims Central Paving never obtained title to the rock it crushed for Consolidated. Therefore, the Commission concluded that the production exemption under former I.C. § 63–3622D(1) did not apply to the rock crushing machine. Thus, the Commission assessed the use tax on the value of the rock crushing machine and its repair parts.

Central Paving appealed the assessment to the district court which reversed the Commission's decision. The court ruled that Central Paving's operation of the rock crusher fell within the statutory language and purpose of the production exemption to the sales and use tax. The court found that Central Paving's crusher was exempt as a separate segment of Central Paving's business which was primarily devoted to manufacturing tangible personal property for ultimate sale at retail. The Commission appeals from the district court's decision. Central Paving cross-appeals on the issue of attorney's fees. We affirm the district court's decision, and deny the cross-appeal.

## ISSUES ON APPEAL

The issue raised on appeal by the Commission is whether the district court incorrectly applied this Court's decision in *Idaho State Tax Comm'n v. Haener Bros., Inc.,* 121 Idaho 741, 828 P.2d 304 (1992), when it allowed Central Paving to claim the production exemption to which Consolidated would have otherwise been entitled had Consolidated itself owned the crusher and crushed the rock.

Central Paving raises these additional issues: 1) whether the Commission may impose non-statutory qualifications on the production exemption to the sales tax, such as a requirement that the manufacturer or producer take title to the goods which will be sold at retail; 2) whether the Commission should be required to pay Central Paving's attorney's fees for its unreasonable pursuit of this case; and 3) whether the Commission should be required to pay Central Paving's attorney's fees on this appeal under I.C. §§ 12–117 & 121 and *Bogner v. State Dept. of Revenue & Tax.*, 107 Idaho 854, 693 P.2d 1056 (1984).

## I. CENTRAL PAVING IS ENTITLED TO THE PRODUCTION EXEMPTION PURSUANT TO I.C. § 63–3622D(1).

The production exemption statute in effect at all times relevant to this case provided as follows:

> **Production Exemption.**—There are exempted from the taxes imposed by this chapter:
>
> (1) The sale at retail, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, mined, produced or fabricated for ultimate sale at retail within or without this state, and tangible personal property primarily and directly used or consumed in or during such manufacturing, processing, mining, logging, farming, or fabricating operations by a business or segment of a business which is primarily devoted to such operation or operations, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of such operation.

■ The language of former I.C. § 63–3622D(1) exempts two different things. First, tangible personal property that becomes an ingredient or component part of other tangible personal property that is manufactured or produced for retail sale is exempt. The second exemption is of tangible personal property primarily and directly used during such manufacturing or processing by a business or a segment of a business which is primarily devoted to such operations, which property is necessary to such operations.

■ Under the first portion of this statute, the rock that is crushed into gravel by the rock crushing machine would be exempt. The second portion of the statute exempts the rock crushing machine itself. The machine is tangible personal property primarily and directly used in a manufacturing process and is essential to such process. The product is gravel used to manufacture concrete, which the Commission acknowledges was properly accounted for by both Central Paving and Consolidated for sales and use tax purposes.

The Commission argues that the district court's decision was erroneous because it allegedly is in conflict with this Court's decision in *Idaho State Tax Comm'n v. Haener Bros., Inc.*, 121 Idaho 741, 828 P.2d 304 (1992), for two reasons. First, the Commission claims that the decision impermissibly allows Central Paving to claim Consolidated's exemption because Central Paving provided services that would have been exempt had Consolidated itself done the work; and second, the Commission argues that the production exemption is not available because Central Paving is a provider of services, *i.e.*, crushing rock.

Although *Haener Bros.* concerns former I.C. § 63–3622D(1), the production exemption statute, it is not dispositive of the issues in this case. *Haener Bros.* involved the lease of equipment to two different groups. First, Haener Bros. leased equipment to Potlatch Corporation to construct, install, and repair manufacturing equipment. Second, Haener Bros. leased equipment to five independent contractors hired by Potlatch to do certain construction, installation and repair on its facilities. With respect to the equipment leased directly to Potlatch, this Court held that the machinery was tax exempt. We found that although Potlatch is primarily in the business of manufacturing wood products, it has an integrated, continuous and important separate operation in manufacturing and fabricating its own processing equipment. We further found that the entire

manufacturing process involved in Potlatch's operation was an integrated and continuous part of producing the final product for ultimate retail sale. Thus, with respect to Potlatch, machinery and tools used to construct and make manufacturing machinery, tools and materials are exempt just as machinery, material and tools used to manufacture the final product are exempt. *Haener Bros.*, 121 Idaho at 746–47, 828 P.2d at 309–10.

With respect to the equipment leased to the independent contractors hired by Potlatch, we found that this machinery was not exempt under former I.C. § 63–3622D(1). We said that if the "leased equipment was used directly in the production and installation of production equipment it would, if used by a business or segment of a business primarily devoted to production operations, be exempt." *Id.* at 750, 828 P.2d at 313. Haener Bros. had argued that the contractors should come within Potlatch's exemption because they were providing services to Potlatch that would have been exempt had Potlatch itself done the acts. We found this argument to be without merit because of the phrase in former I.C. § 63–3622D(1), "by a business or segment of a business primarily devoted to such operations." We held that Haener Bros. was not entitled to the exemption because there was no evidence in the record indicating the contractors were a business or segment of a business primarily devoted to production operations. *Id.*

In the present case, the Commission likens Central Paving to the independent contractors in *Haener Bros.* Thus, the Commission claims, because this Court disallowed the exemption for the independent contractors in *Haener Bros.*, so should the district court have done with respect to Central Paving since the facts are indistinguishable. We disagree. Contrary to the Commission's argument, Central Paving did not claim it was entitled to the exemption because Consolidated would have been entitled to it. Rather, Central Paving claimed it qualified for the exemption in its own right. Thus, Central Paving's status, if anything, is more analogous to that of Potlatch.

Although as an overall entity Central Paving is primarily engaged in the business of road paving, it has clearly separated out the rock crushing operation at the gravel pit controlled by Consolidated. According to the record, only 4% of Central Paving's rock crushing operation goes into Central Paving's road paving projects, upon which Central Paving pays the appropriate use tax. The remainder of the gravel is delivered to Consolidated for manufacture into concrete or cement. Consolidated then properly accounts for and reports all sales and use taxes due on the cement production.

■ We agree with the district court that the rock crushing operation is a segment of Central Paving's business, which segment is primarily engaged in crushing rocks into gravel for use in cement mixing and ultimate sale at retail by Consolidated. The rock crushing machine is not primarily engaged in crushing rock for road paving; rather, the primary purpose of the rock crusher is to crush for ultimate retail sale. We hold that that purpose qualifies the crusher and all repair parts and equipment for the production tax exemption under former I.C. § 63–3622D(1). Further, this holding does not conflict with *Haener Bros.*, because, as previously stated, the independent contractors in that case were not a business or segment of a business primarily devoted to manufacturing or production operations. In the present case, the Commission even admits in its initial brief that Central Paving operates a separate segment of business from its road paving business which is primarily devoted to crushing rock for Consolidated to sell at retail.

■ With respect to the Commission's argument that the production exemption does not apply to service contracts and that Central Paving was required to have title to the gravel in order to reap the benefits of the exemption, we agree with the district court that such arguments are irrelevant in this case. If the statute's purpose is to exempt materials and equipment used in the manufacture of items ultimately sold at retail then it makes no difference whether the manufacturing process is contracted out to various parties who never obtain title to or ownership of the product being manufactured and items ultimately sold. The determining fac-

tor is whether the party engaged in the manufacturing process has a business segment primarily devoted to such manufacturing. Thus, whether Central Paving obtained title to the gravel or was performing a service upon it is irrelevant to the proper determination of this case. We therefore hold that Central Paving is entitled to the production exemption. The Commission is ordered to reimburse Central Paving for the tax assessment and interest already paid plus interest on the entire amount from the date of the payment.

## II. CENTRAL PAVING IS NOT ENTITLED TO ATTORNEY'S FEES.

In its cross-appeal, Central Paving claims that the district court should have awarded it attorney's fees under I.C. § 12–117 and I.C. § 12–121. I.C. § 12–117 governs the award of attorney's fees in proceedings between persons and state agencies. The statute provides that "the court shall award the person reasonable attorney's fees, witness fees and reasonable expenses, if the court finds in favor of the person *and also* finds that the state agency acted without a reasonable basis in fact or law." I.C. § 12–117(1) (emphasis added). We agree with the district court that attorney's fees are not warranted in this case. There was a reasonable controversy over the application of the production exemption to the circumstances. The Commission presented "more than merely a colorable claim." *Lockhart v. Department of Fish & Game*, 121 Idaho 894, 898, 828 P.2d 1299, 1303 (1992). Thus, we cannot say that the Commission acted without a reasonable basis in fact or law.

Central Paving also claims that it is entitled to attorney's fees pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). In order to recover fees under this statute, the moving party must show that the action was "brought, pursued or defended frivolously, unreasonably or without foundation ..." I.R.C.P. 54(e)(1). This Court has held that in deciding whether an award of attorney's fees is proper, "the sole question is whether the losing party's position is so plainly fallacious as to be deemed frivolous, unreasonable

or without foundation." *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 92, 803 P.2d 993, 998 (1991), *quoting Severson v. Hermann*, 116 Idaho 497, 777 P.2d 269 (1989). Under the facts of this case, we do not find that the Commission's actions were so clearly fallacious as to be deemed frivolous, unreasonable or without foundation. Therefore, we hold that Central Paving is not entitled to attorney's fees under I.C. § 12–121. Costs to Central Paving. No attorney's fees on appeal.

McDEVITT, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.