978 P.2d 233

TREASURE VALLEY CONCRETE, INC.,
an Idaho corporation, Plaintiff–Counter-
defendant–Respondent–Cross Appellant,

v.

STATE of Idaho; State Board of Land
Commissioners by and through Phil E.
Batt, Governor; Pete T. Cenarrusa, Sec-
retary of State; Alan G. Lance, Attorney
General; J.D. Williams, State Control-
ler; and Anne Fox, Superintendent of
Public Instructions; and Idaho Depart-
ment of Lands by and through Stanley
Hamilton, Director, Defendants–Coun-
terclaimants—Appellants–Cross Respon-
dents.

Idaho Power Co., an Idaho Public
Utility, Plaintiff–Respondent–
Cross Appellant,

v.

State of Idaho; State Board of Land Com-
missioners by and through Phil E. Batt,
Governor; Pete T. Cenarrusa, Secretary
of State; Alan G. Lance, Attorney Gen-
eral; J.D. Williams, State Controller;
and Anne Fox, Superintendent of Public
Instruction; and Idaho Department of
Lands by and through Stanley Hamil-
ton, Director, Defendants–Appellants–
Cross Respondents.

No. 23955.

Supreme Court of Idaho,
Boise, December 1998 Term.

April 30, 1999.

Hon. Alan G. Lance, Attorney General; William S. Whelan, Deputy Attorney General, Boise, for appellants. William S. Whelan argued.

Mary K. Denton, Meridian, for respondent.

SILAK, Justice.

This is an appeal from a judgment and decree quieting title to real property in favor of respondents Treasure Valley Concrete, Inc. (TVC) and Idaho Power Company (IPCO). This case involves a dispute over whether sand and gravel constitute "minerals" within the meaning of section 47–701 of the Idaho Code, thereby giving the appellant State of Idaho (State) an ownership interest in the sand and gravel located on the land at issue. We affirm the district court's order granting summary judgment in favor of TVC and IPCO.

This case also involves a cross-appeal by TVC and IPCO from the district court's order denying their request for attorney fees. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

### A. Facts

The land owned by TVC, which is the subject of this action, was originally conveyed by the State to TVC's predecessor in title on May 13, 1940, pursuant to an instrument which states: "The State reserves the right to all coal, oil, oil shale, gas, phosphate, sodium and other mineral deposits contained in this land, as required by Chapter 96 of the 1923 Session Laws." A deed to the land dated April 24, 1950, also recited that the conveyance was "subject to ... the provisions of Section 47–701, Idaho Code, reserving to the State all Mineral rights in lands sold subsequent to the 8th day of May, 1923."

The land owned by IPCO, which is the subject of this action, was originally sold by the State in three separate parcels. The first parcel was sold to IPCO on August 5, 1946, and is evidenced by a certificate which contains a mineral reservation identical to the reservation contained in the TVC instrument. The deed to the first parcel was issued on October 16, 1946, and contained a mineral reservation which was slightly different from the deed to the TVC land: "subject to ... the provisions of Section 46–701, Idaho Code Annotated, reserving to the state all mineral rights in lands sold subsequent to the 8th day of May 1923."

The second parcel was originally sold to Parke P. Gavin on August 5, 1947. This transfer is evidenced by a certificate which also contains the above mineral reservation. This second parcel was eventually assigned to IPCO. A deed was issued to IPCO on January 27, 1949, and contained a mineral reservation identical to the reservation in the October 16, 1946 IPCO deed.

The third parcel was sold to Parke Gavin on August 5, 1947, subject to the same general mineral reservation. This third parcel was eventually assigned to Harold O. Nelson, and on November 22, 1978, a deed was issued to Mr. Nelson with a mineral reservation that lists "sand, gravel and pumice," but with these words stricken by a typewriter.

### B. Procedural Background

TVC initiated this action by filing a complaint to quiet title to the sand and gravel located on its parcel on July 17, 1996. IPCO filed a similar complaint on August 26, 1996. The State, in answering each complaint, asserted that the mineral reservations in the respective instruments and deeds encompass sand, gravel, and pumice under I.C. § 47–701 of the Idaho Code as in effect at the time of the land transfers. Following a consolidation of the cases, motions for summary judgment were filed by the State and also by TVC and IPCO. On May 29, 1997, the district court quieted title in favor of TVC and IPCO, finding TVC and IPCO to be owners in fee simple, including title to the sand, gravel, and pumice located on the land. The State appeals.

## II.

### ISSUES ON APPEAL AND CROSS–APPEAL

The State presents the following issue on appeal:

1. Whether the district court erred in holding that sand, gravel and pumice did not constitute "minerals" within the meaning of I.C. § 47–701, prior to its amendment in 1986.

Respondents raise the following additional issue on appeal:

2. Whether respondents are entitled to attorney fees on appeal for the reason that this appeal: (1) is based on insufficient grounds in law or fact; (2) has been brought unreasonably and without foundation; and (3) arises out of a disputed commercial transaction with the State.

Respondents also present the following issue on cross-appeal:

1. Whether the district court erred in denying TVC's application for attorney fees under I.C. §§ 12–120, 12–121 and 12–117.

## III.

### ANALYSIS

#### A. Standard Of Review

■ In an appeal from an order granting summary judgment, this Court applies the same standard of review as that used by the district court when originally ruling on the motion. *Mitchell v. Bingham*, 130 Idaho 420, 422, 942 P.2d 544, 546 (1997); *State v. Rubbermaid, Inc.*, 129 Idaho 353, 355–56, 924 P.2d 615, 617–18 (1996). Upon review, all disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Mitchell*, 130 Idaho at 422, 942 P.2d at 546; *Rubbermaid*, 129 Idaho at 356, 924 P.2d at 618. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *McCoy v. Lyons*, 120 Idaho 765, 769,

820 P.2d 360, 364 (1991) (quoting I.R.C.P. 56(c)). Because the construction and application of a legislative act are pure questions of law, this Court exercises free review over such questions. *Mitchell*, 130 Idaho at 422, 942 P.2d at 546.

#### B. The District Court Correctly Concluded That Sand, Gravel And Pumice Did Not Constitute "Minerals" Within The Meaning Of I.C. § 47–701, Prior To Its Amendment in 1986.

##### 1. Statutory history of Idaho mineral reservations

In 1923, the Idaho legislature enacted the predecessor to I.C. § 47–701, which reserved to the State certain minerals when State lands were sold. This original enactment stated in relevant part: "All coal, oil, oil shale, gas, phosphate, sodium, and other mineral deposits in land belonging to the state are hereby reserved to the state." 1923 Idaho Sess. Laws, ch. 96, § 1. The act reserved to the State the ownership of the minerals and the right of the State or persons authorized by the State to "prospect for, mine, and remove such deposits and to occupy and use so much of the surface of said land as may be required for all purposes reasonably incident to the mining and removal of such deposits therefrom." *Id.*

In 1925, the legislature amended the 1923 statute, in part, as follows:

> The terms "mineral lands", "mineral", "mineral deposits", "deposit", and "mineral right", as used in this Chapter, and amendments thereto shall be construed to mean and include all coal, oil, oil shale, gas, phosphate, sodium, *asbestos, gold, silver, lead, zinc, copper, antimony and all other mineral lands, minerals or deposits of minerals of whatsoever kind or character.*

1925 Sess. Laws, ch. 220, § 1. (Emphasis added). This provision was originally codified at I.C. § 46–701 but is now part of the current version of I.C. § 47–701.

In 1981, the legislature again amended I.C. § 47–701 to add "geothermal resources" to the list of minerals reserved. 1981 Idaho

Sess. Laws, ch. 325, § 1 (H.B. No. 354). This bill had originally proposed the addition of sand, gravel and pumice specifically to the enumerated minerals reserved to the State in I.C. § 47–701. However, the bill was passed with an amendment deleting the reference to sand, gravel and pumice and adding instead geothermal resources.

In 1986, the legislature amended I.C. § 47–701 to provide that the terms "mineral lands," "mineral," "mineral deposits," "deposit," and "mineral right," as used in Chapter 7 "shall be construed to mean and include ... salable minerals...." 1986 Idaho Sess. Laws, ch. 81, § 1. The legislature also passed a new section that is now codified as I.C. § 47–701A:

> Definition.—As used in section 47–701, Idaho Code, the term "salable minerals," means a mineral substance that can be taken from the earth and that has a value in and of itself separate and apart from the earth and includes, but is not limited to, building stone, cinders, *pumice,* scoria, clay, diatomaceous earth, *sand, gravel,* quartz, limestone and marble.

*Id.* at p. 239–40. (Emphasis added).

### 2. I.C. § 47–701 did not reserve sand, gravel, and pumice until after the 1986 amendment.

The State argues that the plain language of I.C. § 47–701 is broad enough to encompass sand, gravel and pumice for three main reasons. First, the State contends that sand and gravel are minerals and were considered minerals according to common usage at the time I.C. § 47–701 was first enacted. Second, the State argues that the phrase "all ... minerals of whatsoever kind or character" requires the Court to define minerals broadly. The State also argues that the meaning of "mineral" should be interpreted broadly given the legislature's intent to provide for maximum income production from endowment lands.

In granting the respondents' summary judgment motion, the district court held that there is no basis from which to conclude that I.C. § 47–701, prior to its amendment in 1986, prohibited the sale of common sand, gravel and pumice along with the land on which it was located. The court further pointed out that even in 1986 sand and gravel were classified as "salable minerals" rather than "minerals." The district court stated that if sand, gravel and pumice were considered minerals, then the grant of land would be nearly a fiction because of the breadth of the reservation. *See Northern Pacific R. Co. v. Soderberg,* 188 U.S. 526, 530, 23 S.Ct. 365, 47 L.Ed. 575 (1903); *State Land Board v. State Dept. of Fish and Game,* 17 Utah 2d 237, 408 P.2d 707, 708 (1965). Pursuant to the accepted rules of statutory construction, we agree with the district court and find the State's arguments to be without merit.

It is a well established rule of this Court that " 'where an amendment is made it carries with it the presumption that the legislature intended the statute thus amended to have a meaning different than theretofore accorded it.' " *Moses v. Idaho State Tax Comm'n,* 118 Idaho 676, 680, 799 P.2d 964, 968 (1990) (quoting *United Pacific Ins. Co. v. Bakes,* 57 Idaho 537, 546, 67 P.2d 1024, 1029 (1937)); *see also, In re Miller,* 110 Idaho 298, 299, 715 P.2d 968, 969 (1986); *Leonard Constr. Co. v. State Tax Comm'n,* 96 Idaho 893, 896, 539 P.2d 246, 249 (1975); *Futura Corp. v. State Tax Comm'n,* 92 Idaho 288, 291, 442 P.2d 174, 177 (1968).

In the present case, in 1923, the enumerated minerals reserved by the State pursuant to I.C. § 47–701 were coal, oil, oil shale, phosphate and sodium. In 1925, this list grew to include asbestos, gold, silver, lead, zinc, copper and antimony. At this point, sand, gravel and pumice were not specifically enumerated minerals. I.C. § 47–701 was not amended again until 1981. At that time, House Bill No. 354 was introduced which would have specifically enumerated sand, gravel and pumice. However, that bill was amended before its enactment to eliminate the reference to sand, gravel and pumice. It was not until 1986, when I.C. § 47–701 was amended again, that the words "sand, gravel and pumice" first appeared in Chapter 7, title 47, of the Idaho Code. Even then, I.C. § 47–701 did not specifically list these substances as minerals. The amendment to that statute added "salable minerals" to the list of minerals. A separate new section was passed, I.C.

§ 47–701A, which defined "salable minerals." It was in this list of minerals that sand, gravel and pumice finally appear for the first time.

▮ Thus, based upon the above-stated rule of statutory construction that, when the legislature amends a statute, it is presumed to have intended that the statute have a different meaning than it had prior to the amendment, we hold that prior to the 1986 amendment, the legislature did not intend for sand, gravel and pumice to be among those minerals reserved by the State when endowment lands were sold. Clearly, there were several occasions on which the legislature could have added sand, gravel and pumice to the list, but did not do so. We can only conclude that by doing so in 1986, it was at that time that the legislature intended for these substances to be reserved. Thus, at the time that TVC and IPCO became the owners in fee simple to the parcels of real property at issue here, they also became the owners of all sand, gravel and pumice found on that property.

We therefore affirm the order of the district court granting summary judgment in favor of the respondents and quieting title in favor of them.

## C. The District Court Did Not Err In Denying Respondents' Request For Attorney Fees Under I.C. §§ 12–120, 12–121, and 12–117.

▮ On cross-appeal, the respondents contend that the district court erred in denying their application for attorney fees under I.C. §§ 12–120, 12–121, and 12–117. We disagree.

I.C. § 12–120(3) provides:

**Attorney fees in civil actions.—**

(3) In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise proved by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The district court, relying on *Bastian v. Albertson's, Inc.,* 102 Idaho 909, 643 P.2d 1079 (Ct.App.1982), denied the respondents request for attorney fees under this section, ruling that "[t]he term commercial transaction is not generally applied to real estate transactions, or to issues involving the ownership of property." In their brief on cross-appeal, the respondents, while conceding that the district court correctly interpreted the *Bastian* opinion, nevertheless urge us to overrule that decision and hold that a real estate transaction could give rise to a claim under I.C. § 12–120(3) depending on the existence of a "transaction" in a commercial context and whether the dispute arises out of that transaction and is the basis for the claims.

The basis for the claims in this case cannot in any way be characterized as a commercial transaction. *See, e.g., Durrant v. Christensen,* 117 Idaho 70, 785 P.2d 634 (1990). This is an action to quiet title in real property, the outcome of which depends on the interpretation of a statute, I.C. § 47–701, and whether the substances sand, gravel and pumice are included in the minerals reserved by the State listed in that statute. The ruling of the district court is affirmed.

▮ In order to receive an award of attorney fees under I.C. § 12–121, the prevailing party must establish that the opposing party brought, pursued or defended the action "frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1); *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). We affirm the district court's exercise of discretion in denying attorney fees under I.C. § 12–121, having concluded that the district court perceived that the decision was discretionary, that it acted within the boundaries of its discretion, and that it reached its decision by an exercise of reason. *See Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

▮ In order to be entitled to an award of attorney fees under I.C. § 12–117, the prevailing party must show that the state agency "acted without a reasonable basis in fact or law." I.C. § 12–117. We affirm the dis-

trict court's ruling that there is no basis for concluding that the State acted without a reasonable basis in fact or law. *See Rincover v. Dep't of Finance,* 99.8 ISCR 287, —— Idaho ——, 976 P.2d 473 (1999). The interpretation of I.C. § 47–701 and whether sand, gravel and pumice are included in that section's list of minerals presents a question of first impression before the Court. Further, although we hold that these substances were not reserved by the State until after the 1986 amendment to I.C. § 47–701, other states have interpreted "minerals" in similar statutes to include sand, gravel and pumice. Thus, we cannot conclude that the State acted without a reasonable basis in fact or law in defending this action.

Thus, we hold that the district court correctly concluded that the respondents were not entitled to an award of attorney fees.

## IV.

## CONCLUSION

We hold that the district court correctly concluded that prior to the legislature's amendment of I.C. § 47–701 in 1986, sand, gravel and pumice did not constitute "minerals" within the meaning of that section.

We further hold that the district court correctly concluded that the respondents are not entitled to an award of attorney fees under I.C. §§ 12–120(3), 12–121, or 12–117.

Accordingly, the district court's order granting summary judgment in favor of the respondents, and the judgment and order quieting title in favor of them is affirmed. The order of the court denying the respondents' application for attorney fees is also affirmed.

No attorney fees are awarded on appeal. Costs on appeal to respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and Justice Pro Tem JOHNSON, CONCUR.